Approved: _____
        BRETT M. KALIKOW
        Assistant United States Attorney

**21 MAG 4396**

Before:THE HONORABLE JAMES L. COTT
        United States Magistrate Judge
        Southern District of New York

- - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | : **SEALED COMPLAINT** |
| | : |
|            - v. - | : Violations of 18 U.S.C. |
| | : §§ 1343 and 2 |
| DAVID KARGADZE, | : |
| | : COUNTY OF OFFENSE: |
|            Defendant. | : New York |
| | : |
| | : |

- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        Adam J. Rodriguez, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

COUNT ONE
(Wire Fraud)

        1. From in or about October 2020 through at least in or about November 2020, in the Southern District of New York and elsewhere, DAVID KARGADZE, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, and did aid and abet the same, to wit, KARGADZE, participated in a scheme to defraud individuals by purporting to sell vehicles online that KARGADZE never intended to deliver and that KARGADZE

in fact never delivered after receiving payments from victims of the scheme.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2. I am a Special Agent with HSI. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience and on my examination of various documents and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. As further explained below, based on the facts set forth below, and my training, experience, and participation in this investigation, I believe that DAVID KARGADZE, the defendant, participated in a scheme to defraud individuals by purporting to sell vehicles online that KARGADZE never intended to, and did not in fact, deliver despite having received payment from victims of the scheme (the "Vehicle Fraud"). As part of his participation in the scheme, KARGADZE opened at least one bank account to receive and withdraw payments by victims of the Vehicle Fraud.

KARGADZE'S PARTICIPATION IN THE VEHICLE FRAUD

4. Based on my review of customs and immigration records and publicly available information, my conversations with other customs, border, and law enforcement officers, and my training, experience, and participation in this investigation, I have learned, in substance and in part, that:

a. On or about November 16, 2020, a flight reservation was made for DAVID KARGADZE, the defendant, to travel from Moscow, Russia to JFK International Airport ("JFK") in Queens, New York (the "Kargadze Flight Reservation").

b. On or about November 20, 2020, in accordance with the Kargadze Flight Reservation, KARGAZDE did travel by airplane from Moscow, Russia to JFK.

    c. In order to enter the United States, KARGADZE utilized a Ukrainian passport (the "Kargadze Passport") and a B2 visa (the "Kargadze Visa"). The Kargadze Visa was granted to him in or about 2018 and expires in or about 2028. A B2 visa permits an individual to enter the United States multiple times for a period of 180 days at a time for the duration of the visa. KARGADZE previously traveled to the United States on the Kargadze Visa, arriving in or about February 2019 and departing in or about July 2019.

    5. Based on my review of publicly available information, I have learned, in substance and in part:

    a. On or about November 23, 2020 (approximately three days after DAVID KARGADZE, the defendant, entered the United States), the corporation Irbis Auto Inc ("Irbis Auto") was registered with the New York Department of State. Records further indicate that service of process for Irbis Auto can be made to the New York Department of State, which will mail such process to "David Kargadze" at an address in New York, New York.

    6. Based on my review of records provided by JPMorgan Chase, my conversations with bank personnel, and my training, experience, and participation in this investigation, I have learned, in substance and in part, that:

    a. On or about November 30, 2020 (approximately 10 days after entering the United States), DAVID KARGADZE, the defendant, opened a bank account at a JPMorgan Chase branch location in Manhattan, New York, in the name of himself and Irbis Auto ("Kargadze Account-1").

    b. To open Kargazde Account-1, KARGADZE provided the bank with, among other things, the Kargadze Passport as a form of identification.

    c. On or about December 29, 2020, Kargadze Account-1 received an incoming wire transfer of approximately $26,500 from a bank account belonging to an individual ("Victim-1").

    d. On or about December 30, 2020, KARGADZE made approximately two cash withdrawals from Kargadze Account-1, totaling approximately $26,490—i.e., the total amount transferred by Victim-1, minus the transfer fee. The withdrawal slips for these withdrawals indicate, in substance and in part, that KARGADZE was the person withdrawing the money, and contain

signatures that appear similar to the signature on the account opening documents.

       7.    Based on my interview of Victim-1, my review of documents provided by Victim-1, and my training, experience, and participation in this investigation, I have learned, in substance and in part, that:

       a.    In or about December 2020, Victim-1 saw an online advertisement for the sale of a recreational vehicle ("Vehicle-1"). Victim-1 contacted the purported seller of Vehicle-1 ("Seller-1") electronically, initially via the website where the advertisement was located and subsequently via email. During those communications, in substance and in part, Victim-1 agreed to purchase Vehicle-1 for a price of $26,500, and Seller-1 agreed to have Vehicle-1 delivered to Victim-1 within approximately one to two weeks.

       b.    After Victim-1 and Seller-1 agreed to the terms of the sale, Seller-1 directed Victim-1 to communicate with a consignment company ("Broker-1") to coordinate the actual sale of the vehicle, to wit, receiving payment and delivering the vehicle.

       c.    Victim-1 communicated with Broker-1 via email. During these communications, in substance and in part, Broker-1 directed Victim-1 to pay for Vehicle-1 by sending a wire transfer to Kargadze Account-1, and confirmed that after the payment was received, Vehicle-1 would be delivered to Victim-1.

       d.    On or about December 29, 2020, Victim-1 sent a wire transfer of approximately $26,500 from Victim-1's bank account in North Carolina to Kargadze Account-1.

       e.    Victim-1 never received delivery of Vehicle-1, or a refund from Broker-1 or Kargadze Account-1.

Additional Vehicle Fraud Victims

       8.    Based on my communications with a source of information ("SOI-1"),[1] my review of bank records, law

---

[1] SOI-1 approached law enforcement after undertaking the actions described below because, according to SOI-1, in substance and in part, SOI-1 became concerned about the legality of the conduct described. SOI-1 provided this information to law enforcement in the hopes, but without the promise, of leniency in connection

enforcement reports and records, my conversations with other law enforcement officers, and my training, experience, and participation in this investigation, I have learned, in substance and in part, that:

      a. In or about October 2020, SOI-1 responded to an online advertisement for jobs pertaining to the sales of automobiles. The advertisement was posted in the name of a purported individual ("CC-1"). SOI-1 contacted CC-1 by texting a phone number listed on the advertisement ("CC-1 Phone Number-1"). Within approximately a few days, SOI-1 received a call from a person claiming to be CC-1 who explained, in substance and in part, that the company buys and sells cars and was looking to expand its business to New York. CC-1 stated that CC-1 had passed along SOI-1's contact information to another person, and provided SOI-1 with the name of that second person ("CC-2").

      b. Approximately three days later, a person claiming to be CC-2 contacted SOI-1 and explained, in substance and in part, that the company SOI-1 would work for buys and sells cars, and that SOI-1 would receive 5% of any deals made by opening a bank account to receive payments, receiving payments, withdrawing the money, and delivering the money in cash to another person ("CC-3"). CC-2 asked SOI-1 to provide a copy of SOI-1's driver license.

      c. Approximately one week later, CC-2 emailed SOI-1 a copy of a contract purporting to be an independent contractor agreement, in the name of the purported company ("Company-1"). CC-2 also provided SOI-1 with incorporation documents and an Employer Identification Number for a different company ("Company-2"), which CC-2 explained would be a company purportedly owned or controlled by SOI-1. SOI-1 was instructed to open bank accounts in the name of Company-2, and instructed SOI-1 where to open the accounts, *i.e.*, which retail banks, all of which were located in New York, New York.

      d. SOI-1 opened two bank accounts at different retail banks (the "SOI-1 Accounts"), and attempted to open a third account at a different bank but was rejected and prevented from opening an account. After opening the accounts, CC-2 would inform SOI-1 when SOI-1 would be receiving incoming car

---

with SOI-1's actions undertaken at the direction of others, described herein.

payments, instructed SOI-1 to withdraw the money received in $8,000 increments, and deliver that cash to CC-3.[2]

   e. From on or about November 6, 2020 through on or about November 12, 2020, consistent with the information CC-2 provided to SOI-1, the SOI-1 Accounts received payments from at least four different individuals (the "CC-2 Victims") totaling approximately $62,600. SOI-1 withdrew approximately $40,400 of that money and delivered it, in person, to CC-3 in Brooklyn, New York.

  9. Based on my interviews of the CC-2 Victims, my review of documents provided by the CC-2 Victims, bank records, and law enforcement reports and records, my conversations with other law enforcement officers, and my training, experience, and participation in this investigation, I have learned, in substance and in part, that:

   a. Each of the CC-2 Victims sent wire transfers to the SOI-1 Accounts as payment for vehicles that the CC-2 Victims were attempting to purchase based on online advertisements. Each of the CC-2 Victims contacted the purported seller of the vehicles to negotiate the purchase. Each of the vehicles the CC-2 Victims attempted to purchase was a different vehicle, and each vehicle's purported seller used a different name. After agreeing to a price with the respective purported sellers, the purported sellers directed the CC-2 Victims to contact a particular broker ("Broker-2") to coordinate the actual sale of the vehicle, to wit, receiving payment and delivering the vehicle.

   b. Each of the CC-2 Victims was instructed by Broker-2 to wire payments to one of the SOI-1 Accounts.

   c. None of the CC-2 Victims ever received the purchased vehicles or a refund from Broker-2.

   d. Each of the CC-2 Victims sent the wire transfers from outside of New York.

---

[2] Based on my training and experience, I know that individuals involved in financial crimes often will engage in transactions in amounts below $10,000 in an attempt to avoid financial reporting requirements, and thereby avoid coming to the attention of law enforcement.

6

KARGADZE'S CONNECTION TO THE ADDITIONAL VEHICLE FRAUD VICTIMS

10. Based on my review of publicly available information, social media records, and law enforcement reports and records, my conversations with other law enforcement officers, and my training, experience, and participation in this investigation, I have learned, in substance and in part, that:

a. There is a publicly available social media profile on the platform "VK" in the name of CC-1 (the individual who posted the advertisement to work for Company-1).

b. There is what appears to be an identical publicly available social media profile on the platform Facebook in the name of CC-1.

c. Subscriber information for CC-1's Facebook profile includes a phone number for CC-1 ("CC-1 Phone Number-2"), which was "verified" by Facebook based on the account holder responding to a text message sent to that phone number.

11. Based on my review of publicly available information, customs and immigration records, and law enforcement reports and records, my conversations with other customs, border, and law enforcement officers, and my training, experience, and participation in this investigation, I have learned, in substance and in part, that:

a. All air carriers operating flights to, from, or through the United States are required to provide U.S. Customs and Border Protection with Passenger Name Record ("PNR") data prior to a flight's departure.

b. PNR data indicates that CC-1 Phone Number-2 was used in connection with making the Kargadze Flight Reservation. The PNR data for the Kargadze Flight Reservation also includes an email address containing the name of CC-1.

12. Based on the foregoing facts—-including specifically, among other things, (a) the PNR data for the Kargadze Flight Reservation connecting DAVID KARGADZE, the defendant, to CC-1; (b) the short timespan between KARGADZE's arrival into the United States and his incorporation of Irbis Auto and opening Kargadze Account-1; (c) KARGAZDE's incorporation of a business in violation of the tourist restrictions on the Kargadze Visa, and the relatively short period of time he is permitted to remain in the United States; and (d) the similar modus operandi of the Vehicle Fraud

7

experienced by Victim-1 and the CC-2 Victims--I believe that KARGADZE is a willful and knowing participant in the Vehicle Fraud.

WHEREFORE, deponent respectfully requests that an arrest warrant be issued for DAVID KARGADZE, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

/s/ Adam J. Rodriguez with permission JLC
_____
Adam J. Rodriguez
Special Agent, Department of Homeland
Security, Homeland Security
Investigations

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 4.1(a) and (b)(2)(A)
 22nd  day of April, 2021

_____
JAMES L. COTT
United States Magistrate Judge

8